IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GRIEL BLACKMON, | ) | Case No. 8:06CV711 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

If a treating physician states that her patient should not make "repetitive motion[s] with his hands," does that mean that the patient can "frequently" use his hands to "finger, handle and feel?" Without explanation, the Administrative Law Judge ("ALJ") implicitly answered "yes" to that question and found Griel Blackmon ("Blackmon") was not entitled to social security benefits as a result.

Because the ALJ did not clearly explain his thinking or clarify with the treating doctor whether a restriction on repetitive hand motions nonetheless permitted frequent hand motions, I will grant this appeal and remand this case for further proceedings before the ALJ. Briefly, my reasons for this decision are set forth below.

### *I.  BACKGROUND*

According to the ALJ, Griel Blackmon, who was 46 at the time of the hearing in 2005 and who possessed only a ninth-grade education (Tr. 15-16), has chronic obstructive pulmonary disease, insulin dependent diabetes, peripheral neuropathy,[1]

---

[1]According to the Mayo Clinic, "peripheral neuropathy" commonly "causes pain and numbness in [the] hands and feet" with a "loss of sensation" that is "often compared to the feeling of wearing a thin stocking or glove." Mayo Clinic, *Nervous*

hypertension, hyperlipidemia, vision deficiency, and disc herniations. (Tr. 27.) As a result, and not surprisingly, the ALJ found that he could not return to his past relevant work as a general laborer or photo finisher. (Tr. 27.)

However, the ALJ also found that Blackmon's residual functional capacity included the "ability to finger, handle and feel" in a "frequent" fashion. (Tr. 25, 371-72, 373-74.) Assuming that Blackmon had that ability, a vocational expert testified that, with the other abilities, options, and limitations posited by the ALJ, there was work available for a person like Blackmon as an order clerk, document preparer, polisher of eye glass frames, small products assembler, and photo finishing mounter. (Tr. 26; 372-75.) Accordingly, the ALJ concluded that Blackmon was not disabled. (Tr. 27-28.)

However, if Blackmon could only "occasionally" "finger, feel and handle," then, according to the vocational expert, there was but one job that would be available—a "call-out operator."[2] (Tr. 380.) Moreover, if Blackmon's testimony was credible that his hands cramped when holding a pair of pliers or a screwdriver for a time or after writing something down for 20 minutes (Tr. 365), then the vocational expert did not believe that a person like Blackmon could find work. (Tr. 381-82.)

Blackmon doctored with Heather Walsh, M.D., for an extended period of time. (*E.g.*, Filing 14-2 at CM/ECF pp. 1-8, Appendix I (charting Blackmon's medical care

---

*System: Peripheral neuropathy*, http://www.mayoclinic.com/health/peripheral-neuropathy/DS00131 (see "Introduction"; "One of the most common causes of the disorder is diabetes.").

[2]In the opinion, the ALJ did not specifically list this job as one that Blackmon could perform. (Tr. 26.)

over the years).)[3]  She saw Blackmon about 15 times between 2002 until the decision was rendered in 2005.

Throughout, the evidence establishes beyond any question that the claimant had very serious problems with diabetes.  For example, in February of 2004, the Methodist Hospital found that Blackmon's hemoglobin A1C, a measurement of plasma glucose used in the treatment of diabetes, was greater than 14.[4]  (Tr. 188.)  For perspective, this is more than twice the recommended level.  *See* American Diabetes Association, *Standards of Medical Care in Diabetes* 12 (2007), http://care.diabetesjournals.org/cgi/content/full/30/suppl_1/S4 .

The medical records also recount frequent mention of difficulty with the claimant's hands.  (*E.g.*, Tr. 180 (Feb. 2002) (cramping in hands); Tr. 177 (Aug. 2002) (pain and numbness in right thumb and sore wrist);  Tr. 159 (Nov. 2003) (hands feel numb); Tr. 188 (Feb. 2004) (examination revealed peripheral sensory neuropathy with symptoms in hands).)  In fact, in early 2004, Blackmon complained to a doctor at the Methodist Hospital that he was "unable to hold a job," in part because of "weakness of the hands . . . ."  (Tr. 195.)

At the hearing before the ALJ, Blackmon was specifically examined regarding his hands, and he testified as follows:

---

[3]I compliment Blackmon's counsel for the quality of his advocacy, particularly regarding this very helpful chart.  More lawyers should emulate counsel's effort to fairly summarize extensive medical records by using a chart containing specific citations to the transcript.

[4]The A1C measurement is sometimes expressed in percentage terms as in "14%" or, more simply, as a raw number such as "14."  *See* "Glycosylated hemoglobin," *Wikipedia* 2-3, http://en.wikipedia.org/wiki/HbA1c (last accessed Nov. 14, 2007) (table, first column).

> Q. Just following up on a couple of things, Dennis. Do you have any problems with your hands?
>
> A. Yes.
>
> Q. What problems do you have with your hands?
>
> A. Well, I have numbness in my fingertips. You know, if I were to try to hold a pair of pliers or a hammer or screwdriver for a certain amount of time, my hands cramp up.
>
> Q. How long a time do you use your hands before they cramp up?
>
> A. I'd say about a good – it takes about maybe a good 20 minutes or so.
>
> Q. Okay. So if you were writing something down for 20 minutes –
>
> A. My hands would cramp up.

(Tr. 364-65.)

On January 20, 2004, Dr. Walsh sent a report to the Disability Determination Section. She stated that Blackmon had the following impairments: uncontrolled insulin dependent diabetes mellitus with urinary incontinence, numbness in the legs, hyperlipidemia, hypertension, reactive airway disease, erectile dysfunction, and early diabetic neuropathy. (Tr. at 156.) In particular, she gave the following opinion:

> I do feel Dennis is limited in his ability to work right now *due to the numbness in his feet and hands* and his periodic dizziness. I definitely would be concerned about his using any heavy machinery. The left elbow pain also limits his ability to lift and carry things of significant weight or for significant duration.

(Tr. at 157 (italics added).)

On January 10, 2005, Dr. Walsh sent a report to Blackmon's attorney. She gave the following opinion:

> Because of the patient's longstanding low back pain with occasional radiation into his right leg we had performed an MRI of his lumbar spine. This was done on 8/20/2004. It showed disk dehydration in the last four lumbar levels and disk space narrowing L5 through S1. He also had a posterior central disk herniation at L3-L4 and L4-L5. The one at L4-L5 was abutting and minimally flattening the thecal sac. He was sent to pain management for an epidural injection, however, that did not seem to relieve his pain. He continues to have significant low back pain. Also, as mentioned above, *he has numbness and tingling in his feet and cramping in his hands.* Therefore, his diagnosis at this time is low back pain with lumbar disk degeneration and herniation at two levels. He also has difficult to manage insulin dependent diabetes mellitus with *peripheral neuropathy in his feet and cramping in his hands*, which is also most likely related to his diabetes. I do feel that he is limited to continuous sitting and standing for less than 30 minutes at a time due to his disk herniation and low back pain at this time. *Repetitive motion with his hands would also be difficult, due to the diabetic neuropathy*. I do not believe at this point he is able to work eight hours per day, five days a week on a regular and continuing basis.

(Tr. 296 (italics added).)

As indicated earlier, the ALJ decided that the claimant had the "ability to finger, handle and feel" in a "frequent" fashion. (Tr. 25, 371-72, 373-74.) The reasoning behind this residual functional capacity determination is unclear.

Without connecting his comments to the plaintiff's hand movements, the ALJ discounted the credibility of the claimant "with respect to the extent of his symptoms and limitations" because he was not compliant with his medications and because he smoked. (Tr. 23-24.) Again without mentioning hand movements, the ALJ also discounted Dr. Walsh's overall opinion about Blackmon's inability to work because

the ALJ did not believe the doctor's rationale was properly explained. (Tr. 24.) However, and in contrast to the medical records and Dr. Walsh's seemingly contrary and specific opinion, the ALJ never explained why Blackmon could perform frequent hand movements. In fact, this unexplained residual functional capacity determination regarding Blackmon's hands appears to conflict with the judge's related determination that Blackmon suffered from peripheral neuropathy which was "severe" in nature. (Tr. 21.)

## *II. ANALYSIS*

"Because a claimant's RFC [residual functional capacity] is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citations omitted). While an ALJ is not limited to considering the medical evidence exclusively when determining RFC, the Social Security regulations require that the treating physician be recontacted if the medical information provided by the doctor is unclear. *Id.* (citing 20 C.F.R. § 416.912(e)[5]).

In this case, the ALJ did not explain the basis for his residual functional capacity determination regarding Blackmon's ability to use his hands. Moreover, the ALJ's residual functional capacity determination that the claimant could use his hands "frequently" is seemingly contradicted by the treating physician's statements, particularly the statement that: "*Repetitive motion with his hands would also be difficult, due to the diabetic neuropathy.*" (Tr. 296 (italics added).) Cases from the Court of Appeals and this court make abundantly clear that a doctor's restriction against repetitive movements should not, without more, be read to mean the claimant

---

[5]Among other things, the regulations state: "We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved . . . ." 20 C.F.R. § 416.912(e)(1).

can make frequent movements. *See Lowe v. Apfel*, 226 F.3d 969, 972-73 (8th Cir. 2000) (reversing and remanding because ALJ found claimant could not "perform repetitive activity with her hands," while also finding that claimant could do work which required claimant to "frequently" use her hands); *Wymore v. Barnhart*, No. 4:06CV3079, Filing 22 at CM/ECF p. 26 (D. Neb. Feb. 8, 2007) (Judge Smith Camp) (reversing and remanding where ALJ provided "no explanation or medical justification" for interpreting doctor's statement that claimant should avoid "repetitive use of hands and wrists" to mean that claimant could "use hands on a frequent basis for fingering and feeling but not on a constant basis").

Accordingly, I will reverse and remand this case for further proceedings. On remand, the ALJ should either contact the treating doctor to obtain a more precise determination about whether the claimant can use his hands frequently as a part of the RFC, or the ALJ should carefully explain his reasoning for arriving at an RFC that seemingly conflicts with the doctor's limitation on hand movements.[6]

IT IS ORDERED that the appeal is granted and this case is reversed and remanded. Judgment will be entered by separate document.

November 14, 2007.                   BY THE COURT:
                                     s/ *Richard G. Kopf*
                                     United States District Judge

---

[6] As for the other arguments—that the ALJ erred because he improperly rejected portions of the treating doctor's opinions or because the hypothetical question put to the vocational expert failed to properly describe the hand restrictions issued by the doctor—I decline to reach those arguments because things may change on remand. That said, the plaintiff's arguments regarding these two points seem persuasive at first glance, and the ALJ would do well to consider them on remand.